RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

　　　　　　　　　　　　　　　　No. 05-4537

AHMED BRIKA,

　　　　　　　*Defendant-Appellant.*

> 

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00126—Algenon L. Marbley, District Judge.

Argued: March 5, 2007

Decided and Filed: May 23, 2007

Before: BOGGS, Chief Judge; and DAUGHTREY and GIBBONS, Circuit Judges.

---

### COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Kevin W. Kelley, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Kevin W. Kelley, Salvador A. Dominguez, Columbus, Ohio, for Appellee.

---

### OPINION

---

　　　BOGGS, Chief Judge. In Columbus, Ohio, Mohammed Bousfiha provided Ahmed Brika, his brother-in-law, with a livelihood. He funded his job training and sometimes offered him a place to live when times were tough. After Bousfiha's marriage to Brika's sister had ended, Brika organized and executed a plot to kidnap Bousfiha in Morocco and hold him for ransom over an allegedly unpaid debt. More than five people were involved in the plot, from the women who initially orchestrated Bousfiha's abduction to the strong-men who held him in captivity. The plotters held Bousfiha for more than seven days. He was physically injured, although he survived the ordeal.

　　　Brika was indicted and prosecuted in the United States District Court for the Southern District of Ohio for acts committed from Columbus to Morocco. He was convicted of using a telephone to extort money in exchange for the release of a kidnapped person, in violation of 18 U.S.C. § 875. The jury could not reach a verdict on another count – conspiracy to commit

hostage-taking, in violation of 18 U.S.C. § 1203 – and a mistrial was declared on that count.  The district court originally sentenced Brika to 240 months of imprisonment.

In a prior appeal, we affirmed Brika's conviction on the § 875(a) violation but remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005).  *See United States v. Brika*, 416 F.3d 514 (6th Cir. 2005).  On remand, the district court sentenced Brika to a lesser term, 156 months of imprisonment.  Brika now appeals his lower sentence.  We affirm.

I

The following facts primarily are derived from our previous opinion affirming Brika's conviction.  Mohammed Bousfiha, the kidnapping victim, came to the United States from his native Morocco in 1988, becoming an American citizen in 1995.  He settled in Columbus, Ohio, where he was joined by his four brothers.  Within several years of his arrival, Bousfiha had started his own business, running first a group of parking lots and later leasing gas stations from BP.  Some of his brothers were also involved in his business ventures.

In the late 1990s, Bousfiha married Brika's sister.  The couple separated in 1999 and divorced in 2000.  During their marriage, however, Brika spent a great deal of time at Bousfiha's home and businesses.  Brika sometimes lived with the couple for weeks at a time.  Bousfiha also gave Brika money and sent him to "BP School," a five-day program run by BP for prospective owners of BP gas stations.

On June 4, 2001, Bousfiha, who was visiting Morocco, was abducted by three women and held for over a week in a remote location by a group of Moroccan kidnappers.  He claims that on the second day of his captivity, Brika, whom he recognized only by voice because he was blindfolded, came to where he was being hidden and threatened him.  That same day, Brika, who also had been visiting Morocco, left that country.  He arrived in New York on June 6, 2001, according to his Moroccan passport, which was stamped on that date by American immigration officials.  He then traveled from New York to Milwaukee, by way of Cincinnati.

Beginning on June 7, 2001 and for the duration of Bousfiha's captivity, Bousfiha's brothers received multiple phone calls from both the kidnappers in Morocco and from Brika in Milwaukee.  The kidnappers and Brika demanded $ 312,000 for Bousfiha's release, representing the sum Brika claims Bousfiha owed him.  Following the advice of the FBI, the Bousfihas told the kidnappers and Brika that they had raised the money.  Brika arranged for one of the Bousfiha brothers to drive to Indiana to deliver the cash.  Immediately after the exchange was made, the FBI captured Brika.  When the kidnappers did not hear from Brika, they grew anxious.  The Bousfihas convinced them that Brika had taken the money and absconded and was not going to pay them.  The kidnappers thereupon negotiated a separate ransom of $35,000 and released Bousfiha on June 13.

A two-count indictment charged Brika with conspiracy to commit hostage-taking, in violation of 18 U.S.C. § 1203,[1] and with using a telephone to extort money in exchange for the release of a kidnapped person, in violation of 18 U.S.C. § 875(a).  At trial, the defense portrayed Brika as an opportunist who heard about the kidnapping and took advantage of it to try to get the Bousfihas to pay a debt that he alleged Mohammed Bousfiha owed to him.  The strategy may have been at least partly successful, because the jury hung on the conspiracy charge.  Brika was found guilty on the second count, using a telephone to extort money, and the judge declared a mistrial on the first count.

---

[1]The charge technically was conspiracy to commit a hostage-taking, rather than conspiracy to kidnap, as stated in the original panel opinion.  18 U.S.C. § 1203, the charged offense, criminalizes hostage-taking.  Brika was not charged with violating the federal kidnapping statute, 18 U.S.C. § 1201.

In Brika's first appeal, we affirmed his convictions, rejecting various alleged grounds of trial-court error. *Brika*, 416 F.3d at 517. However, we remanded the case for resentencing in light of *Booker*. *Id.* at 531. On remand, the district court relied on the same enhancements to Brika's sentence that it relied upon when it originally sentenced Brika. Those enhancements gave Brika a guidelines range of 262 to 327 months.[2] After considering that range and mitigating evidence Brika presented, the district court sentenced Brika to 156 months of imprisonment.

## II

We first address Brika's non-constitutional challenges to various guidelines enhancements. Brika argues that the district court erred by finding him criminally responsible for a kidnapping offense; that the district court ignored our court's prior mandate; and that the district court erred by relying on unreliable evidence at sentencing. Each of these claims lacks merit.

## A

Brika first argues that the district court erred in determining that he was criminally responsible for a kidnapping offense, such that the higher base offense level for kidnapping would apply by cross-reference. Because a determination of criminal responsibility is a mixed question of law and fact, we review it *de novo*. *See United States v. Whited*, 473 F.3d 296 (6th Cir. 2006). Facts employed by the district court to decide criminal responsibility are reviewed for clear error. *United States v. Gates,* 461 F.3d 703, 709 (6th Cir. 2006).

Brika was convicted for using a telephone to extort money in exchange for the release of a kidnapped person, in violation of 18 U.S.C. § 875(a). USSG § 2A4.2 applies to that offense and carries a base offense level of 23. That provision also contains the following cross-reference provision: "If the defendant was a participant in the kidnapping offense, apply § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint)." Section 2A4.2's application note defines a "participant" as a person "criminally responsible" for the kidnapping offense, even though that person need not have been convicted of kidnapping. To determine criminal responsibility, we apply the federal kidnapping statute, 18 U.S.C. § 1201, which provides, *inter alia*:

§ 1201. Kidnapping

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when--

> (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;
>
> . . . .

---

[2] The district court began with an offense level of 24, by cross-reference to USSG § 2A4.1(a) (2001). The court then applied a six-level ransom-demand enhancement, a four-level leadership enhancement, a two-level serious-bodily-harm enhancement, a two-level dangerous-weapon enhancement, and a one-level enhancement for not releasing the victim within seven days. The base level for the offense was thus 39. Brika's criminal history was in Category I. His guidelines range accordingly was 262 to 327 months.

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

Applying that statute, the facts in this record show, by a preponderance of the evidence, *see Gates*, 461 F.3d at 708, that Brika was criminally responsible for the kidnapping. His conduct satisfies both *actus reus* elements of the offense. He (1) seized, kidnapped, abducted, or carried away Bousfiha and (2) held him for ransom or reward. As noted by the district court on resentencing, there is ample evidence in the record that Brika paid the three women who abducted Bousfiha; that he otherwise led the group that secured Bousfiha's detention; that he visited and confronted Bousfiha in person in Morocco while Bousfiha was being detained; that Bousfiha heard Brika's voice while being held; that Brika sought ransom from the victim's family by telephone; and that Brika otherwise exercised authority over those who kidnapped and held the victim. The district court found those facts, and they are not clearly erroneous. They show by a preponderance of the evidence that Brika's conduct satisfies the two *actus reus* elements of § 1201.

Both of the statute's Commerce-Clause-based jurisdictional elements, *see United States v. Lopez*, 514 U.S. 549, 562-63 (1995), are also satisfied here, although only one is required. Bousfiha was transported in foreign commerce when he was kidnapped and detained in Morocco. Brika traveled in foreign commerce when he flew to Morocco in furtherance of the offense and then reentered the United States. He traveled in interstate commerce when he flew from New York to Cincinnati to Milwaukee, and then again when he drove to Indiana. Brika also, as a necessary condition of his § 875(a) conviction, used a means or instrumentality of interstate or foreign commerce (a telephone) in committing the offense for which he was convicted. Brika thus satisfies each jurisdictional element of § 1201, although he need only have satisfied one to have been criminally responsible. Brika's conduct rendered him criminally responsible for kidnapping according to the elements of that offense under 18 U.S.C. § 1201.

We pause to dispense with another of Brika's arguments with respect to this claim. Brika argues that the district court applied a *per se* rule that any individual convicted under § 875(a) is necessarily subject to the kidnapping cross-reference. If Brika's characterization of the district court's ruling were accurate, his argument might have merit. There must be cases in which a defendant could be convicted under 18 U.S.C. § 875(a) without being criminally responsible for the kidnapping offense itself. Concluding otherwise would allow the cross-reference to swallow the normally applicable guidelines provision. We obviously are not inclined to render guidelines provisions superfluous by interpretation. *United States v. Sanders*, 162 F.3d 396 (6th Cir. 1998); *United States v. Bazel*, 80 F.3d 1140, 1144-45 (6th Cir. 1996).

However, Brika's characterization of the district court's ruling is inaccurate. The district court entertained the possibility that a conviction under § 875(a) would always implicate the cross-reference, but eventually settled on a fact-pattern in which a person could be convicted under 18 U.S.C. § 875(a) without being "criminally responsible" for the kidnapping itself. In that situation, an opportunist, knowing of a kidnapping victim, would solicit ransom from the victim's close friends or relatives. In such a case, according to the district court, the defendant would not be "criminally responsible" for the kidnapping. JA 190-200.

Although we need not decide whether an "opportunist" is the only § 875(a) defendant who would not be subject to the cross-reference, we pause to note one other point. The statute's plain text requires that, for one to be guilty of kidnapping, he must (1) seize, confine, inveigle, decoy, kidnap, abduct, or carry away his victim *and* (2) hold him for ransom or reward or otherwise. Each *actus reus* – some manner of seizure *and* of holding – is a required element of the offense. A defendant might be responsible for the holding, but not the seizure, of a kidnapping victim. A defendant might also hired by kidnappers *after* a seizure in order to secure ransom. In these cases,

and perhaps in others, a defendant convicted of violating § 875(a) might not be held criminally responsible for a kidnapping.

For this case, however, we need only say that the district court did not rest on any *per se* rule requiring the application of the cross-reference. Instead, after discussing how an individual could avoid the application of the cross-reference, the district court evaluated the facts of this case and held, by a preponderance of the evidence, that Brika was criminally responsible for the kidnapping. Reviewing that determination *de novo*, we agree.

B

Brika next argues that the district court violated this court's prior mandate by relying on conduct at sentencing that a jury could not agree on. We review the scope of our own mandates *de novo*, *United States v. Orlando*, 363 F.3d 596, 600 (6th Cir. 2004), taking into account the letter and spirit of the mandate, *United States v. Twp. of Brighton*, 282 F.3d 915, 919 (6th Cir. 2002). When we last considered Brika's case, we issued an opinion ending with the following:

> At sentencing, Brika objected to the various enhancements, but he did not specifically make a Sixth Amendment claim. Nonetheless, we review sentencing enhancements in violation of the Sixth Amendment under plain error review. *United States v. Oliver*, 397 F.3d 369, 380-81 (6th Cir. 2005). In light of the district court's clear use of facts not found by the jury to increase Brika's sentence by a substantial amount, we vacate the sentence and remand this case to the district court for resentencing in a manner consistent with *United States v. Booker*, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005).

*Brika*, 416 F.3d at 531.

This issue is not a difficult one. It is clear that our prior mandate was a garden-variety *Booker* remand. Surely, if we had held that the cross-reference itself had violated the Sixth Amendment because the jury had hung on the hostage-taking count, the district court would have been bound by that holding. However, on the previous appeal, we simply vacated and remanded in light of *Booker* because the district court's sentencing of Brika under a mandatory guidelines regime violated the Sixth Amendment.

The scope of the remand was to reconsider Brika's sentence in light of *Booker* and in light of developing circuit case law in that case's wake. In other words, we did not direct the district court to make any particular Sixth Amendment ruling one way or the other on the question of how to employ conduct on which the jury could not agree. Instead, we merely vacated and remanded the case with instructions to follow *Booker* faithfully. The district court did so and thus complied with our mandate.

C

Brika next argues that the district court erred by relying on unreliable evidence when it applied an enhancement for leading or organizing a group of five or more people in the commission of the kidnapping offense. Specifically, Brika contends:

> The court relied on statements made by women in Morocco in which they claimed they were paid to participate in the offense. The women were never in court, and never testified. Neither was the alleged officer who took said statements. There was no evidence as to how those statements were obtained, or who provided the translation of those statements. The defense had no ability to cross-examine these

women or otherwise impugn their credibility. The court should not have relied on such evidence in determining the Guidelines range.

*Br. of Appellant*, at 17.

Brika acknowledges that neither the rules of evidence nor the right to confront witnesses applies at sentencing. *See United States v. Katzopoulos*, 437 F.3d 569 (6th Cir. 2006); *United States v. Wisdom*, 175 F. App'x 702, 708 (6th Cir. 2006). However, he is correct that the district court is obligated to rely on *reliable* evidence at sentencing. As we have noted, in "challenges to [hearsay] evidence considered by the sentencing judge, the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992) (en banc). *See also* USSG § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Brika's challenge thus raises two questions. First, what evidence did the district court rely on when enhancing Brika's sentence based on a leadership role? Second, has Brika shown that evidence to be unreliable under the *Silverman* standard? At resentencing, the district court said:

It appeared that all of the activities surrounded Mr. Brika, at least that was the testimony. He coordinated with the kidnappers in Morocco, he coordinated with the women who were the first to abduct Mr. Bousfiha, and he was the person who seemed primarily involved with coordinating with the family, and indeed he was the individual who went to pick up the money.

And if you just do the math, there were three or four women involved with the initial abduction, there were either three or four men who originally captured Mr. Bousfiha, who took him up the mountain to the house, and then there were two others who replaced those individuals when those individuals were considering entering into a side deal with Mr. Bousfiha I think for $20,000, then that would mean five or more persons. So the probation officer properly concluded that an additional 4 levels should be used to increase the total offense level.

First, we note that the women's statements were confessions and hence against their penal interests. The women were in fact prosecuted in Morocco for their crimes. Under our law of evidence, the statements' reliability is bolstered by being given under such circumstances. *Cf.* Fed. R. Evid. 804(b)(3); *United States v. Luciano*, 414 F.3d 174, 180-81 (1st Cir. 2005) (noting that out-of-court statements employed at sentencing had indicia of reliability of excited utterances under Fed. R. Evid. 803(2)).

Moreover, given the other evidence in this case, the statements of the three women are corroborated and bear adequate indicia of reliability. *Cf. Luciano*, 414 F.3d at 180. Bousfiha himself testified that he was abducted by three women, one of whom was named Amal. He also testified that the men who held him in custody discussed the whereabouts of the three women after the kidnapping. Bousfiha also testified that at least two men kept him in custody in Morocco initially and that new people guarded him after he tried to bribe the first two. Bousfiha also testified that Brika threatened him while he was in the kidnappers' custody in Morocco – "I was blindfolded, I did have my hand tied, my feet tied, I was on the ground, on the floor. And he came and kicked me and talked to me in English. And he said, I got you now. You're mine. Who do you think you are? And he said, I'm going to order the guys don't give you no water, no food for three days. You will die, cut you in pieces, and throw you in the sea for the fish."

As we have noted, Brika must show both that the three women's statements were materially false or unreliable, and that those false statements "actually served as the basis" for the district court's sentencing decision. *See Silverman*, 976 F.2d at 1512. He has made neither showing. On the contrary, the evidence in this case indicates that the statements bear substantial indicia of reliability. In light of the evidence taken as a whole, the district court did not rely on unreliable evidence at sentencing. Accordingly, its factual determination that Brika led a group of five or more people to kidnap Bousfiha was not clearly erroneous, *see Gates*, 461 F.3d at 709, and the enhancement was proper.

III

We now address Brika's constitutional and *Booker* challenges to his sentence, each of which attacks from a different angle the district court's consideration of conduct on which a jury could not agree. First, he argues that the court's consideration of that conduct at sentencing violated the Sixth Amendment. Second, he contends that the district court's application of various guidelines enhancements under a preponderance-of-the-evidence standard denied him due process. Third, he argues that his sentence was both substantively and procedurally unreasonable. Each challenge lacks merit.

A

Brika first alleges that the district court's consideration at sentencing of conduct on which a jury could not agree violated the Sixth Amendment. We believe that this argument is foreclosed by *Watts v. United States*, 519 U.S. 148, 157 (1997). The Supreme Court held in *Watts* that conduct on which a jury rendered a judgment of acquittal may be considered by a sentencing judge, so long as the conduct was proven by a preponderance of the evidence. 519 U.S. 148, 157 (1997) ("We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). If district courts at sentencing may employ conduct on which a jury rendered a judgment of acquittal using only a preponderance-of-the-evidence standard, then surely they may employ conduct on which a jury could not agree using the same standard.

We acknowledge that *Watts* was decided before *United States v. Booker*, 543 U.S. 220 (2005), which held that the Guidelines are advisory rather than mandatory. Nevertheless, other circuits have seen no reason to disturb *Watts*'s holding in *Booker*'s wake. *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005); *United States v. Price*, 418 F.3d 771, 788 (7th Cir. 2005). *See also United States v. Fruchter*, 137 F. App'x 390, 394 (2d Cir. 2005) ("[U]nder the Guidelines, the district court was entitled to consider acquitted conduct as relevant conduct."). *Cf. United States v. Green*, 181 F. App'x 506, 508 (6th Cir. 2006) (citing *Watts* with approval).

We see no logical contradiction between *Watts* and *Booker*. It is clear after *Booker* that district courts may still find facts at sentencing by a preponderance of the evidence. *Gates*, 461 F.3d at 708; *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005).[3] Congress has made clear that, in making those factual determinations, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

---

[3] As we recently noted, *Booker* did nothing to affect the standards of proof relevant at sentencing: "Before *Booker*, the Supreme Court had held on a number of occasions 'that application of the preponderance standard at sentencing generally satisfies due process.' *Booker* did nothing to change this standard." *United States v. Green*, 181 F. App'x 506, 508 (6th Cir. 2006) (citing *Watts*, 519 U.S. at 156; *Nichols v. United States*, 511 U.S. 738, 748 (1994); and *McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986))

Given those conditions, we see no reason to exclude from the court's consideration conduct on which a jury either deadlocked or rendered a judgment of acquittal. It goes without saying that district courts hear first-hand evidence pertaining to such conduct and that defense counsel has the opportunity to test the reliability of evidence pertaining to that conduct at trial. The reliability of evidence is also assured, to some extent, by the rules of evidence.

*Booker* does not suggest otherwise. That case and its predecessors deal with whether the sentencing guidelines are mandatory and whether a court may sentence a defendant above an offense's statutory maximum by finding facts not authorized by the jury's verdict. *Booker* permits district courts to find facts at sentencing. *Watts* discusses only the standard of proof that applies when that fact-finding takes place. There is no contradiction between them. Accordingly, *Watts* controls here. Until the Supreme Court holds differently, a jury's inability to reach a verdict on a particular count under a reasonable-doubt standard does not require district courts to employ anything other than a preponderance standard at sentencing.

Brika does point us to two district-court decisions that hold that the Sixth Amendment requires that a district court apply a reasonable-doubt standard, rather than a preponderance standard, when considering conduct on which the jury rendered a judgment of acquittal. *United States v. Coleman*, 370 F. Supp. 2d 661, 668-69 (S.D. Ohio 2005); *United States v. Pimenthal*, 367 F. Supp. 2d 143, 152-53 (D. Mass. 2005). In both cases, the district courts held themselves to a reasonable-doubt standard at sentencing when dealing with facts on which a jury had rendered a judgment of acquittal. In the first, *Coleman*, 370 F. Supp. 2d at 668-69, the district court wrote that, when considering conduct for which a defendant was acquitted, sentencing judges should employ a reasonable-doubt standard in finding facts, because, "otherwise, a defendant's Sixth Amendment right to a jury trial is eviscerated."[4] In the second, *Pimenthal*, the district reached the same holding as the *Coleman* court reached with respect to acquitted conduct, writing that "[e]ven if . . . a judge may consider all facts, including acquitted conduct, the standard of proof to be applied should be beyond a reasonable doubt." 367 F. Supp. 2d at 152-53.

While we disagree with the substantive outcomes of those two cases in light of *Watts*, they have no impact here because they deal only with acquitted conduct, rather than conduct on which the jury could not agree. Moreover, they say nothing about a district court's power to *consider* either type of conduct. Instead, they only seek to alter the standard a district court should apply.[5] Two other circuits have held that, even in *Booker*'s wake, acquitted conduct may be considered by the sentencing judge under a preponderance standard. *Duncan*, 400 F.3d at 1304; *Price*, 418 F.3d at 788. If acquitted conduct may be considered under that standard, certainly no higher standard should apply to conduct on which a jury could not agree. We hold, therefore, that the preponderance standard, supplied by *Watts* and unchanged by *Booker*, applies regardless of whether the jury hung on a particular count.

---

[4]*Coleman* also produces the following difficulty. A jury convicts a defendant of one out of two charged offenses. A sentencing court could, when sentencing on the convicted count, flatly disagree with the jury's determination on the acquitted count and find guilt beyond a reasonable doubt. The rule proposed by *Coleman* thus could lead to conflicting determinations by judges and juries, while the *Watts* rule avoids that problem, respects the jury's reasonable-doubt determination, and simply applies the congressionally mandated standard.

[5]We note that, in this case, the district court said that, even considering the evidence in this case under a reasonable-doubt standard, it would have found Brika "criminally responsible" for the kidnapping. While we agree, that conclusion is unnecessary to the outcome of this case because district courts need only apply a preponderance standard at sentencing.

B

Brika next argues that the district court's reliance on conduct on which the jury could not reach a verdict violated due process in his particular case because it drastically increased his guidelines range from 46 to 57 months to 262 to 327 months. Brika ultimately was sentenced to 156 months.

Brika's due-process claim rests on *United States v. Kikumura*, 918 F.2d 1084, 1089 (3d Cir. 1990). In that case, the Third Circuit held as a matter of statutory interpretation that clear-and-convincing-evidence should be the applicable standard in cases where "the magnitude of a contemplated departure is sufficiently great that the sentencing hearing can fairly be characterized as 'a tail which wags the dog of the substantive offense.'" *Id*. at 1101 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)). The factor at issue in *Kikumura* was a single, almost twelve-fold departure of 327 months from the top of the applicable guidelines range of 27 to 33 months.[6]

Prior to *Booker*, we declined to follow *Kikumura* and squarely rejected all claims along the lines of the one Brika advances here. *United States v. Mayle*, 334 F.3d 552, 556-57 (6th Cir. 2003) ("Although the case before us undeniably presents one of those exceptional situations where the sentencing factor has a disproportionate effect on the sentence relative to the offense of conviction, this Circuit has previously rejected the invitation to adopt a higher standard of proof simply because the enhancement would significantly increase the defendant's sentence."); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001).

Today, while we reaffirm those precedents, we reformulate them in *Booker* terms. *Kikumura*'s reasoning might have had some basis in due-process principles under the mandatory guidelines regime. That is so because a defendant had an entitlement to be sentenced within his guidelines range absent circumstances justifying upward departure. *United States v. Guarin*, 898 F.2d 1120 (6th Cir. 1990). However, after *Booker*, the only constraints on sentencing judges are the statutory maximum and minimum for the offense at issue and the sentencing statutes, particularly 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 232-33; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Viewed in this light, Brika could not have had a reasonable expectation that he would have received a sentence within his guidelines range absent the application of the various enhancements. Instead, he had only an entitlement to be sentenced to a reasonable sentence within the statutory range. Brika's argument–that the district court violated his due-process rights when it calculated his guidelines range as 262 to 327 months by applying various enhancements under a preponderance standard–thus misses the mark.[7]

---

[6] In *Watts*, the Supreme Court, citing *Kikumura*, expressly left unanswered the question of whether such extreme departures required higher than a preponderance standard. 519 U.S. at 156-57 ("We acknowledge a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence. The cases before us today do not present such exceptional circumstances, and we therefore do not address that issue.").

[7] We note one other important point. Even if we applied *Kikumura*, it would be of no aid to Brika. *Kikumura* dealt with a single and substantial sentencing departure rather than small, individual enhancements authorized by the guidelines. In this case, the district court applied the cross-reference to kidnapping under § 2A4.1. The court then applied a six-level ransom-demand enhancement, a four-level leadership enhancement, a two-level serious-bodily-harm enhancement, a two-level dangerous weapon enhancement, and a one-level enhancement for not releasing the victim within seven days. The offense level was thus 39.

Brika's position would require that the government prove each of those enhancements by a standard of proof higher than preponderance-of-the-evidence. At the time Brika was sentenced, the cross-reference provision, by itself, increased Brika's sentence by only one level. Due process certainly would not have required a higher standard of proof for a one-level enhancement by itself. *Silverman*, 976 F.2d at 1518.

After *Booker*, we believe Brika's due-process challenge is cognizable more properly as a challenge to the reasonableness of his sentence. Judge Bye's concurrence in *United States v. Bah*, which Brika cites in his brief, makes this point clear. 439 F.3d 423, 432-33 (8th Cir. 2006). Judge Bye noted that an upward departure of 180 to 300 percent would have been unreasonable and justifiable only in "extraordinary circumstances." *Id.* at 432-33 (citing *United States v. Saenz*, 428 F.3d 1159, 1162 (8th Cir. 2005)).

We agree with Judge Bye on the proper analytical framework. As a defendant's sentence increases further and further above his properly calculated guidelines range, it becomes more and more likely that his sentence is substantively unreasonable. *See, e.g.*, *United States v. Davis*, 458 F.3d 491 (6th Cir. 2006). Thus, while we reaffirm our earlier holding that due process does not require sentencing courts to employ a standard higher than preponderance-of-the-evidence, even in cases dealing with large enhancements, *see Mayle*, 334 F.3d at 556-57, we also hold such challenges should be viewed through the lens of *Booker* reasonableness rather than that of due process.

C

We now proceed to address Brika's *Booker* reasonableness challenges. Under *Booker*, we review sentences for reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). However, a district court's role is not to impose a "reasonable sentence." Instead, a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a). "Reasonableness is the appellate standard of review in judging whether a district court" has fulfilled that mandate. *United States v. Collington*, 461 F.3d 805, 807-08 (6th Cir. 2006) (citing *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

The Sixth Circuit's reasonableness test has substantive and procedural components. "A sentence may be considered substantively unreasonable when the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Ibid.* (citing *Webb*, 403 F.3d at 383) (internal quotation marks omitted). "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Ibid*.

In arguing that his sentence was unreasonable, Brika raises two claims. First, he contends that the district court sentenced him outside of his guidelines range because the district court misapplied the Guidelines by relying on conduct on which the jury could not agree. *Br. of Appellant*, at 19-20. This is a procedural-reasonableness challenge because it attacks the process by which the district court applied the Guidelines. We already have rejected Brika's challenge to the district court's employment of conduct on which the jury could not agree and to the court's application of various guidelines enhancements at sentencing. Brika's guidelines range was calculated correctly. His procedural-reasonableness challenge thus lacks merit.

---

The same reasoning applies to the other enhancements. None of the individual enhancements in this case was very large. If we were to adopt Brika's position, district courts could not predict when due process would require heightened standards of proof. After a three-level enhancement? An eight-level enhancement? How would the defendant's pre-enhancement offense level factor into such an analysis? We decline to invite more uncertainty into criminal sentencing. Even if we applied *Kikumura* to some cases, we would apply it only to departures (or perhaps single enhancements) large enough to "wag the dog" of the substantive offense. 918 F.2d at 1089. None of the enhancements here does that.

Brika's other *Booker* claim is a substantive-reasonableness challenge. According to Brika, if the district court had not considered conduct on which the jury could not agree, his sentence would have been approximately five years. That fact, combined with "the lack of a prior criminal history for the Appellant, his good acts, his family and friend support, and his good works while incarcerated," leads to the conclusion that "the reasonable sentence to impose would have been the five year term." *Br. of Appellant*, at 21.

Brika's claim amounts to an assertion that the district court failed to accord proper weight to his mitigating evidence. *Collington*, 461 F.3d at 807-08 (noting that a substantive-reasonableness challenge is one that alleges that the district court failed to accord proper weight to a sentencing factor under 18 U.S.C. § 3553(a)); 18 U.S.C. § 3553(a)(1) (requiring the district court to consider the history and characteristics of the defendant). It is true that the defendant had little criminal history. It is also true that his family and friends extended warm support for him. And, it is true that the defendant has done several good things while incarcerated, including working as a Draftsman Helper in prison. Indeed, his supervisor in that job wrote him a letter of recommendation at re-sentencing, which his supervisor alleges was a rare thing for him to have done. In other words, there appears to be some justification for a downward variance from Brika's guidelines range.

That is precisely what happened here. The district court knew that the defendant's guidelines range was 262 to 327 months and that the statutory maximum was 240 months. Nevertheless, the court on resentencing, after hearing Brika's mitigating evidence, sentenced him only to 156 months. Surely, the district court did not note explicitly on the record how much weight it accorded to each particular piece of mitigating evidence. Nevertheless, the record in this case indicates that the district court considered each piece of evidence offered. Witnesses, including Brika's friend Courtney Warren and his sister Latifa Brika, testified on his behalf. The district court posed its own questions to Ms. Warren. The district court imposed a sentence that was more than 80 months below the statutory maximum and even further below the bottom of the applicable guidelines range. We have no doubt that the district court adequately considered Brika's mitigating evidence. We also note that the district court honored the defendant's request to be placed in a facility close to his family. In light of these factors, we believe the district court chose a substantively reasonable sentence.

IV

We lastly consider two claims raised by Brika in a *pro se* supplemental brief before this court. Brika first argues that his indictment was defective because the prosecutor failed to plead and prove an essential element of the indictment. Next, he argues that the jury instructions departed from the indictment, such that there was a "constructive amendment" of the indictment which rendered it defective. Neither claim has merit.

A

The first claim raised in Brika's *pro se* brief amounts to a claim that the indictment failed to specify "that the alleged victim was a kidnapped person." Brika claims this error is a defect in the indictment that may be raised at any point during the case. *See* Fed. R. Crim. P 12(b)(3) ("[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.").

To the extent that Brika challenges the prosecutor's failure to *prove* an element of the offense, we cannot now consider his arguments. Brika's convictions already have been affirmed by an earlier panel. Questions of proof of guilt are not properly before us on this appeal from resentencing. *United States v. Procter*, No. 06-5586, 2007 U.S. App. LEXIS 2076, at *5 (6th Cir. Jan 26, 2007) ("Defendant's third argument could have been brought in his first appeal and is

therefore waived. Defendant may not reassert issues that he raised or should have raised in his earlier appeal.") (citing *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000)).

To the extent that Brika claims the indictment itself is defective because it fails to invoke the court's jurisdiction or to state an offense, a claim that we could review at any time, *see* Fed. R. Crim. P. 12(b)(3), his assertion is without merit. He claims that his indictment for crimes under 18 U.S.C. § 875(a) (using the phones to extort ransom) and 18 U.S.C. § 1203 (hostage-taking) failed to state an offense because the government did not plead the "kidnapped person" element. Brika's claim is erroneous. He was convicted only under § 875(a). The indictment on that count clearly refers to the "ransom and reward for the release of Mohammed Bousfiha *who had been kidnapped* and was then being held for ransom and reward." (emphasis added). The government did not fail to specify a kidnapped person.

We note that there are two alternative ways to construe Brika's argument. First, Brika may be arguing that the jury's two verdicts were inconsistent because they resulted (1) in a conviction under a statute (§ 875(a)) that required that a person be kidnapped and (2) in an acquittal on the hostage-taking offense. *See Pro Se Supp. Br. of Appellant*, at 8 ("the Appellant states with equal simplicity that there cannot be a kidnapped person . . . without a kidnapping."). We cannot review this claim in this appeal. However, even if the verdicts were inconsistent, that would not be a ground for reversal. *See United States v. Powell*, 469 U.S. 57, 64-65 (1984) (citing *Dunn v. United States*, 284 U.S. 390, 393 (1932) (Holmes, J.))

Brika also may be arguing that, because the government did not indict him for kidnapping under 18 U.S.C. § 1201, the government failed to state an offense under § 875(a). *Pro Se Supp. Br. of Appellant*, at 10. Brika refers this court to no authority indicating than an indictment under § 875(a) must accompany one under § 1201. They are separate statutes with separate sentencing guidelines; no authority suggests than an indictment for the former must accompany one for the latter. We note also that Brika's arguments relating to the kidnapping cross-reference depend on a defendant's being able to violate § 875(a) without being responsible for kidnapping. Brika cannot have it both ways. Brika has not shown that the indictment failed to state an offense, such that we could reverse his conviction on this appeal.

B

Brika's second *pro se* claim is that the district court delivered "an erroneous instruction upon a jury note wherein it instructed the jury with the essential elements of 18 U.S.C. 875(b) and 875(c), wherein the defendant, Brika, had only been indicted by the Grand Jury on 18 U.S.C. 875(a) . . . . This constructive amendment of the indictment is a jurisdictional defect which also can be raised at any time." *Pro Se Supp. Br. of Appellant*, at 2-3. Because it relates to the propriety of jury instructions, rather than to whether the indictment invoked the district court's jurisdiction or stated an offense, this issue is clearly one which should have been raised in Brika's first appeal. It has

thus been waived.**8** *Procter*, No. 06-5586, 2007 U.S. App. LEXIS 2076, at \*5 (citing *McKinley*, 227 F.3d at 718).

V

Having rejected all of Brika's challenges to his sentence, we affirm.

---

**8**Were we to consider this issue, we would review it for plain error. *United States v. Swafford*, 385 F.3d 1026, 1028 (6th Cir. 2004). Under any standard, however, Brika's contention would lack merit. The district court relied on two cases when it issued jury instructions: *United States v. Cooper*, 523 F.2d 8-10 (6th Cir. 1976), and *United States v. Holder*, 302 F. Supp. 296, 297 (D. Mont. 1969). Brika is correct that those two cases applied different subsections of 18 U.S.C. § 875 than that which is at issue here. He claims that, as a result, we now should reverse his conviction.

Although we need not consider this claim, we note that there was no error on this score, let alone a plain one. *Cooper* makes clear that convictions under § 875(c) do not require ultimate power to release the victim. There is no textual feature materially distinguishing § 875(a) from § 875(c) on that front. As we have held, it is only natural that the similarly worded subsections of § 875 be read together. *United States v. Heller*, 579 F.2d 990, 997-99 (6th Cir. 1978) (holding that different subsections of § 875 should be given similar interpretations). As a result, Brika's contention that the district court "constructively amended" his indictment by referring to cases dealing with analogous statutes lacks merit.