NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0549n.06

No. 08-5722

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 26, 2010

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA , | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GREGORY WILLIAM FLACK, JR., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

Before:     KEITH, COLE, and GIBBONS, Circuit Judges.

**DAMON J. KEITH, Circuit Judge**.  Appellant Gregory Flack, Jr. ("Flack") appeals his sentence of 120 months imprisonment for one count of knowingly, intentionally, and without authority possessing crack cocaine with the intent to distribute.  Flack argues that his sentence was unreasonable because the district court granted an upward departure to his sentence, citing his engagement in a high speed car chase, while simultaneously elevating his base offense level under the Sentencing Guidelines ("Guidelines")  for the same conduct.  For the reasons discussed below, we **AFFIRM**.

I.

A.     **Factual Background**

Flack pleaded guilty to knowingly, intentionally and without authority possessing crack cocaine with intent to distribute on November 1, 2007, the single count in his indictment.  The Presentence Investigation Report ("PSR") contains the following facts as the "offense conduct":

On May 1, 2006, Officer Frankie Cameron of the Alcoa Police Department, Tennessee, was on patrol, and noticed a white Mercury Marquis partially parked in a driveway of a residence known for drug activity. A check on the license tag revealed the tag belonged to another vehicle. During this time, the vehicle drove away from the residence, and traveled a short distance before turning into a business. Officer Cameron initiated his emergency lights to perform a traffic stop. The driver pulled into a parking space at the front of the business. Officer Cameron approached the vehicle and requested the driver provide identification. As he came closer to the vehicle, Officer Cameron smelled what he thought was burning marijuana coming from the vehicle. The driver produced an identification card with the name of Gregory Flack, Jr. Officer Cameron was able to confirm that the defendant did not have a valid driver's license. Officer Cameron requested the defendant exit the vehicle, as the officer was placing the defendant under arrest for driving without a license. While attempting to place handcuffs on the defendant, Flack began to resist, and attempted to bring both hands in toward his waistband. The defendant continued to resist, and kept trying to put his hands in his waistband. At that time, Officer Cameron ordered the defendant to give the officer his wrists, or Officer Cameron would have to use his Taser stun gun. The defendant continued to resist, and as the officer reached for his Taser, the defendant pushed the officer off balance with his shoulder, and jumped back into the vehicle. The officer grabbed the door with both hands trying to prevent the door from closing. A customer exited the business, and attempted to assist the officer. When the officer was able to open the door, the defendant put the vehicle into reverse, and accelerated. The officer and the private citizen were between the door and the vehicle when the defendant's actions caused his vehicle to hit the front of the patrol car. The officer and citizen were able to jump away from the vehicle. Officer Cameron drew his firearm, as he feared the defendant would hurt a citizen. The defendant drove toward the front of the business, and was able to exit the parking lot. The officer did not fire his weapon, but was able to get back into his vehicle, and a high speed chase ensued. Officer Cameron observed the defendant run through a stop sign, almost striking a motorcycle. The defendant continued to run from the officer, ignoring traffic lights, and running several cars off the roadway.

The defendant drove on the grass median, and off the right side of the roadway at a high rate of speed, dodging all traffic. As the defendant continued, he lost control of this vehicle, causing the vehicle to overturn. The defendant exited the vehicle through the window, and ran from officers. The defendant was found after a short foot chase, laying on the ground with his hands in a pile of gravel. At that point, he was placed under arrest with little resistance. A subsequent search of the area by the K-9 unit resulted in the officers finding a plastic bag with a hard white rock-like substance, and two plastic bags with a green leafy substance in the gravel where the defendant

had placed his hands. A firearm was found laying on the ground beside the overturned vehicle. The firearm was not loaded with ammunition. The defendant was transported to the University of Tennessee Medical Center for evaluation. The contents of the three bags were analyzed, and one bag contained a substance determined to be cocaine base, weighing 4.2 grams. The other two bags were analyzed, and contained marijuana in the amount of 4.1 grams.

(PSR at 3-4.)

## B.     Procedural History

Prior to Flack's sentencing hearing, both the government and Flack prepared sentencing memoranda disputing certain aspects of the PSR. The government requested an upward departure from the Sentencing Guidelines range of 92-115 months, which had been set forth in the PSR. The government also requested upward departures pursuant to U.S.S.G. §§ 5K2.6 (Weapons and Dangerous Instrumentalities), 5K2.14 (Public Welfare), and 4A1.3 (Inadequacy of Criminal History Category). In his sentencing memorandum, Flack argued the following: (1) an upward departure for the high speed chase was unnecessary because he had already received a two-level enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight; (2) he had been adequately punished under the Guidelines' 75 to 1 crack to powder disparity; and (3) twelve of the criminal history points applied to him came from his juvenile record and were nonrepresentative of his current nature and characteristics.

The district court granted two of the government's requests for an upward departure, sentencing Flack to 120 months imprisonment as to the sole count of the indictment. The court concluded that U.S.S.G. § 3C1.2 did not adequately account for Flack's conduct. The court stated: "Defendant used his vehicle as a dangerous weapon both as he left the gas station/convenience store

parking lot . . . and through his flight at a high rate of speed through the public streets while other vehicles were on the road." (R. 26, Sentencing Tr. at 54.) The court explained that the departure was grounded in U.S.S.G. §§ 5K2.6 and 5K2.14, as well as the comments to § 3C1.2. (R. 26, Sentencing Tr. at 55.) The district court denied the government's request for an upward departure pursuant to U.S.S.G. § 4A1.3. A judgment was entered on May 20, 2008, and a timely appeal was filed on June 9, 2008.

II.

A. **Standard of Review**

A sentencing court's determination is reviewed "under a deferential abuse of discretion standard" for reasonableness. *Gall v. United States*, 552 U.S. 38, 41 (2007). A review for reasonableness includes considering both procedural and substantive reasonableness. *See United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008) (citing *United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007)). In reviewing a sentencing calculation for procedural reasonableness, findings of fact made by the district court for sentencing are reviewed for clear error, and legal conclusions are reviewed *de novo*. *See United States v. Thompson*, 586 F.3d 1035, 1038 (6th Cir. 2009) (citing *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006)).

B. **Merits**

Flack argues that his sentence was unreasonable. At sentencing, a district court is tasked with imposing "a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2). *United States v. Presley*, 547 F.3d 625, 631 (6th Cir. 2008). A sentence may be procedurally unreasonable if the district court failed to consider the applicable Guidelines range,

or neglects to consider the factors listed in 18 U.S.C. § 3553(a). *See United States v. Brika*, 487 F.3d 450, 462 (6th Cir. 2007). Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. The Guidelines range is the "starting point and the initial benchmark" of the analysis. *Id.* at 49. Here, the district court reviewed all the information provided by the parties and the Probation Office and adequately explained the basis for the sentence. (R. 26, Sentencing Tr. at 43-50.) The district court discussed each of the § 3553 (a) factors and discussed the parties' arguments. In this regard, it committed no procedural error.

Flack claims that the district court engaged in impermissible double counting. District courts may not engage in impermissible "double counting" when sentencing a defendant, and doing so renders a sentence procedurally unreasonable. *See United States v. Farrow*, 198 F.3d 179, 195 (6th Cir. 1999). "[I]mpermissible 'double counting' occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *Id.* This Court has stated that "[b]y observing this rule, we seek to advance one of the overarching purposes of the Sentence Guidelines as set forth in an introductory Policy Statement: namely, to achieve 'proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity.'" *Id.* at 193 (citing U.S.S.G. Ch. 1 Pt. A at 2). However, where the Guidelines themselves appear to intend for multiple penalties to attach for the same conduct, double counting is permissible. *Id.* at 194.

As an initial matter, we find that Flack's actions when entering and exiting the parking lot should not be treated as distinct from his actions while on the road in the car chase. To do otherwise would create "an artificial and unrealistic division of a single uninterrupted course of conduct into separate events." *United States v. Beckner*, 983 F.2d 1380, 1384 (6th Cir. 1984) (rejecting the government's argument that defendant committed three separate acts during the course of a high speed chase when she endangered the lives of three different groups of individuals, in different manners, with her vehicle during her escape). The more reasonable approach is to treat the high speed chase as one act and then make a determination regarding the appropriateness of "double counting" on the basis of this singular high speed car chase.

Flack's offense base level was enhanced pursuant to U.S.S.G. § 3C1.2, which states that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." In addition to the two-level enhancement under § 3C1.2, the district court granted an upward departure for the same conduct that served as the basis for the two-level enhancement pursuant to §5K2.6[1] and § 5K2.14,[2] citing the § 3C1.2 Application Notes. The Application Notes for § 3C1.2 state that "where a higher degree of culpability [than recklessness] was involved, an upward departure above the 2-level

---

[1] In relevant part, U.S.S.G. §5K2.6 states, "[i]f a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range."

[2] In relevant part, U.S.S.G. § 5K2.14 provides, "[i]f national security, public health, or safety was significantly endangered, the court may depart upward to reflect the nature and circumstances of the offense."

increase provided in this section may be warranted," U.S.S.G. § 3C1.2, Cmt. 2, and where "death or bodily injury results or the conduct posed a substantial risk of death or bodily injury to *more than one person*, an upward departure may be warranted," U.S.S.G. § 3C1.2, Cmt. 6 (emphasis added).

The primary issue is whether Flack's conduct fits within the conduct contemplated by the Guidelines. "The [Sentencing] Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' set of typical cases embodying the conduct that each guideline describes." U.S.S.G. ch.1, Pt. A(1), n.4(b). Section 5K2.0(3) of the Guidelines states that a "departure may be warranted in the exceptional case even though the circumstance that forms the basis for the departure is taken into consideration in determining the guidelines range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense." As this Court held in *United States v. Chance*:

> [D]eparting from the Sentencing Guidelines [pursuant to U.S.S.G. § 5K2.0] is a four-step process requiring the sentencing court to ask and answer the following questions: 1) What features of the his case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?

306 F.3d 356, 393 (6th Cir. 2002). Sentencing courts should depart from the Guidelines only after determining that the defendant's conduct is outside the "heartland" of cases in the Guidelines. *See United States v. O'Georgia*, 569 F.3d 281, 289-90 (citing *United States v. Erpenbeck*, 532 F.3d 423, 439-40 (6th Cir. 2008)).

The primary issue here is factor one, *i.e.*, whether this case has features that take it outside the Guidelines's heartland. Factors two through four are easily met because the Guidelines expressly allows for departures if a defendant's conduct is outside the heartland of the Guidelines during a high speed chase. *See* U.S.S.G. § 3C1.2, Cmts. 2, 6. The district court made the following factual findings in this case:

> The Court notes that in this case the Defendant used his vehicle as a dangerous weapon both as he left the gas station/convenience store parking lot and through his high flight– and through his flight at a high rate of speed through public streets while other vehicles were on the road. Particularly, at the beginning stage of Defendant's flight, he disregarded the safety of Officer Cameron and the good Samaritan, Mr. Lana . . . who were wedged between the driver's door and the interior of Defendant's vehicle in an attempt to stop him from fleeing, and the multiple pedestrians present at the gas station/convenience store.
>
> During Defendant's flight he disobeyed rules of the road by failing to obey signals, driving at a high rate of speed and swerving throughout other traffic. His driving was such that he ultimately flipped his vehicle.
>
> The Court also notes the Defendant had a passenger in his vehicle at all times who was also at risk of serious injury. Defendant's behavior created a serious risk of danger to the officer, to Mr. Lana, to Defendant's passenger and to other members of the public. Additionally, the Defendant had a firearm in his possession at the time of the offense and flight, though there is no indication that he discharged it during the course of the offense and flight; and afterward it was apparently determined the weapon was unloaded.

(R. 26, Sentencing Tr. at 54-55.) Given these factual findings, the district court concluded that Flack's conduct was outside the heartland of cases contemplated by the Guidelines, and granted the departure on this basis. The district court further noted that Flack's conduct was of a more extreme nature than other cases involving a § 3C1.2 enhancement. "While the question of what constitutes endangerment is a mixed question of law and fact, it is highly fact-based. Therefore, significant

deference to the district court is required." *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005) (citing *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001)). In light of the high level of deference afforded to the sentencing court, we find that the district court did not abuse its discretion in departing from the Guidelines under these circumstances.[3]

III.

For the foregoing reasons, we **AFFIRM**.

---

[3]Flack argues that the district court's "double counting" of the high speed chase was unreasonable because the district court failed to fully consider the 75:1 crack/powder disparity applicable to his sentence. For the reasons discussed herein, the district court did not abuse its discretion when departing from the Guidelines and finding that his conduct was outside the heartland of the Guidelines.