NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0775n.06
Filed: October 30, 2007

Case No. 06-3297

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| FOUR PILLARS ENTERPRISE | ) | DISTRICT OF OHIO |
| COMPANY, LTD., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

BEFORE: GUY, BATCHELDER and GIBSON[*], Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Defendant-Appellant Four Pillars Enterprise

Company, Ltd. ("Four Pillars") has twice before appeared before this Court to appeal its sentence

for attempt and conspiracy to commit theft of a trade secret, in violation of 18 U.S.C. §§ 1832(a)(4),

(5). In this third appeal, Four Pillars challenges the district court's latest post-*Booker* re-sentencing,

claiming that the district court improperly used judicial fact-finding to calculate its sentence in

violation of the Fifth and Sixth Amendments and that the sentence is unreasonable. Finding no merit

in either claim, we affirm.

### I. BACKGROUND

---

[*]The Honorable John R. Gibson, Circuit Judge for the United States Court of Appeals for the Eighth
Circuit, sitting by designation.

On April 28, 1999, a jury in the Northern District of Ohio convicted defendants Pin Yen Yang, his daughter Hwei-Chen Yang ("the Yangs"), and his closely-held corporation Four Pillars, for attempt and conspiracy to steal trade secrets from Avery Dennison Corporation ("Avery"), in violation of the Economic Espionage Act of 1996, 18 U.S.C. § 1832 ("EEA"). The defendants were arrested after Victor Lee, an Avery employee and longtime paid informant of Four Pillars, helped the FBI organize a sting in which the defendants took mock confidential Avery documents from Lee. The government originally charged the defendants with 21 counts, including eight counts of mail fraud, five counts of wire fraud, three counts of money laundering, three counts of receiving stolen property, and two counts of violating the EEA. After commencement of the trial, the court granted the government's motion to dismiss seven counts of the indictment; at the close of the evidence, the court granted the defendants' motion for judgment of acquittal on all of the remaining counts except one mail fraud count and the two EEA counts; and the jury convicted the defendants only on the EEA counts.

At the original sentencing in 2000, the primary issue before the court was the amount of loss caused by the defendants' actions. The district court concluded that the defendants were engaged in a scheme to obtain from Avery confidential and proprietary information, including approximately 60 adhesive formulas, and that this scheme constituted relevant conduct under U.S.S.G. § 1B1.3.[1] The court found that one of these formulas, S-490, cost Avery $869,300 to research and develop. Using that cost as the amount of loss to Avery, the court then adjusted Four Pillars's offense level upward by 13, pursuant to U.S.S.G. § 2B1.1(b)(1)(N).

While the district court acknowledged that Four Pillars had obtained other formulas from

_____

[1]The district court used the 1998 Sentencing Guidelines.

Avery, it concluded that the government had failed to prove the amount of Avery's loss for these formulas. The district court, therefore, elected to increase Four Pillars's offense level by one point, pursuant to U.S.S.G. § 5K2.5, to account for the additional loss caused by Four Pillars. Lastly, the court also added two offense levels to account for more than minimal planning, bringing the adjusted offense level to 20.

The court then applied a 14-point downward departure to Four Pillars's offense level to account for what the court viewed as Avery's improper participation in the prosecution. Accordingly, Four Pillars's final offense level was six, resulting in a fine ranging between $5,000 and $16,000. The district court, however, sentenced Four Pillars to pay a $5 million fine, the statutory maximum. On appeal, we affirmed the conviction but vacated and remanded for re-sentencing. *United States v. Yang*, 281 F.3d 534 (6th Cir. 2002) (*Yang I*). We questioned the relevance of Avery's conduct to Four Pillars's guilt or punishment, and held that the district court had abused its discretion by applying a 14-point downward departure to Four Pillars's sentence to account for that conduct. *Id*. at 546-47. We also noted that the district court failed to provide a sufficient explanation for its decision to apply the statutory maximum fine of $5 million to Four Pillars. *Id*. at 547. At this point, Four Pillars had paid $1,000,000 toward the fine.

At the first re-sentencing, in July 2003, the district court responded to our ruling in *Yang I* and eliminated from the calculation the 14-point downward departure and any consideration of Avery's conduct. The court, however, retained both Four Pillars's 13-level upward adjustment based on the judge's factual finding that the company's criminal acts caused more than $800,000 in loss to Avery and the other adjustments to the base offense level from the original sentencing. Four Pillars's new offense level was 20, resulting in a fine in the Guidelines range of $1,390,880 to

3

$2,781,760. The district court imposed a $2 million fine. Four Pillars appealed.

Pursuant to the intervening Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), we found that the district court plainly erred at re-sentencing because the court enhanced Four Pillars's sentence based on extra-verdict factual findings under a mandatory Guidelines scheme. *United States v. Yang*, 144 F. App'x 521, 524 (6th Cir. 2005). We vacated Four Pillars's sentence for a second time and remanded for re-sentencing under the advisory Guidelines.

The district court imposed the identical sentence of a $2 million fine, rejecting Four Pillars's argument that the finding of at least $800,000 in loss was unconstitutional in light of *Booker*. Four Pillars timely appealed.

## II. ANALYSIS

### A. Four Pillars's Sentence is Constitutional

Four Pillars challenges the constitutionality of its sentence, arguing that the district court's use of acquitted conduct, facts which the court found by a preponderance of the evidence, to enhance the sentence violated both the Sixth and the Fifth Amendments. Four Pillars's constitutional claims are without merit.

"Since a constitutional challenge to a sentence raises a question of law, we review [Four Pillars's] claim *de novo*." *United States v. Beverly*, 369 F.3d 516, 536 (6th Cir. 2004). In *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006), we held that an argument similar to the one Four Pillars makes here "overstate[d] the result in and the reach of *Booker*. It is true that, in sentencing, a court may not rely on facts other than those rendered in the verdict or which the defendant has specifically admitted to impose a *mandatory* enhancement. But that ruling has no bearing on *advisory* guideline calculations." *Cook*, 453 F.3d at 777 (emphasis added) (citation omitted).

4

"Because the guidelines are now advisory and not mandatory, a District Court may rely on extra-verdict facts or on those other than which the defendant has specifically admitted when it calculates his sentence." *Id.*

> We have held repeatedly that *Booker* and its precursor, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), did not eliminate judicial fact-finding during sentencing. Rather, district courts must "calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range." *United States v. Stone*, 432 F.3d 651, 655 (6th Cir. 2005); *see also United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006).

*United States v. Flores*, 477 F.3d 431, 438 (6th Cir. 2007). "*Apprendi* is not triggered so long as the judicial findings of fact do not result in the defendant receiving a sentence that exceeds the statutory maximum." *Id.*; *see also United States v. Bullock*, 130 F. App'x 706, 713 (6th Cir. 2005) ("This Court has consistently approved of Guideline enhancements so long as the resulting sentence falls below the congressionally-prescribed statutory maximum.").

Here, the statutory maximum sentence is $5 million. 18 U.S.C. § 1832(b). Because the district court imposed a fine well under the statutory maximum, "the proscriptions of *Apprendi* have not been triggered." *United States v. Sake*, 191 F. App'x 401, 404 (6th Cir. 2006). Likewise, the district court did not violate Four Pillars's Sixth Amendment rights when it made factual determinations at sentencing because it clearly recognized that the Guidelines are advisory.

Four Pillars next argues that *Booker* does not specifically address the standard by which a district court finds facts at sentencing and that "the constitutionality of such provisions are ripe for this Court's consideration." We have held numerous times, however, that the defendant suffers no constitutional violation when district courts find facts relevant to sentencing by a preponderance of the evidence. "[T]his court and others have repeatedly held since *Booker* that district judges can find

5

the facts necessary to calculate the appropriate Guidelines range using the same preponderance-of-the-evidence standard that governed prior to *Booker*." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006); *see also United States v. Brika,* 487 F.3d 450, 459 n.3 (6th Cir. 2007) ("*Booker* did nothing to affect the standards of proof relevant at sentencing."); *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) ("[W]e find that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury.").

At oral argument, Four Pillars suggested that *Rita v. United States*, 127 S. Ct. 2456 (2007), abrogated this circuit's precedent that a district court may find facts by a preponderance of the evidence and use such findings to enhance a defendant's sentence. We disagree.

*Rita* does not alter our circuit's law as to judicial fact finding or the preponderance-of-the-evidence standard. In *Rita*, the Supreme Court affirmed that "[its] Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence. Nor do they prohibit the sentencing judge from taking account of the Sentencing Commission's factual findings or recommended sentences." *Rita*, 127 S. Ct. at 2465-66 (citations omitted). *Booker* (1) "held unconstitutional that portion of the Guidelines that made them mandatory" and (2) "recognized that when district courts impose discretionary sentences, which are reviewed under normal appellate principles by courts of appeals, such a sentencing scheme will ordinarily raise no Sixth Amendment concern." *Id.* at 2467. *Rita* acknowledges that judges may find facts under the advisory Guidelines scheme without running afoul of the Sixth Amendment. And we find nothing in *Rita* that suggests that a district court may *not* find those facts by a preponderance of the evidence.

Next, Four Pillars argues that the district court treated the Guidelines as being *de facto* mandatory, and, therefore, violated Four Pillars's Fifth and Sixth Amendment rights by finding extra-verdict facts to enhance the sentence. To support this argument Four Pillars points out that the district court did not revisit its prior loss calculation or reinstate the 14-point downward departure it originally imposed based on Avery's behavior.

The re-sentencing transcript refutes Four Pillars's assertion that the district court treated the Guidelines as if they were mandatory. The district court repeatedly acknowledged the advisory nature of the Guidelines and stated that the Guidelines were only one factor of several that the court considers in imposing a sentence. Moreover, at the first re-sentencing (in July 2003), the district court acknowledged that it could reconsider Four Pillars's entire sentence upon remand, but that it could also choose not to reconsider the entire sentence; the court elected not to revisit the loss calculation or its reasons for granting the original 14-point downward departure based upon Avery's behavior. Finally, the district court had no obligation to revisit its earlier sentencing analysis. "When the Sixth Circuit 'vacates a sentence and remands to the district court for "re-sentencing," that order is considered a general one that allows the district court to resentence the defendant *de novo*.'" *United States v. Hwei-Chen Yang*, 153 F. App'x 379, 380 (6th Cir. 2005) (quoting *United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003)).

> We review the district court's decision not to revisit an issue during re-sentencing for abuse of discretion. We have never held that a general remand for re-sentencing requires a district court to revisit each issue. *To the contrary, we have repeatedly held that a district court, acting in its discretion, may choose not to reconsider the entire sentencing procedure.*

*Id*. at 380-81 (citations omitted) (emphasis added).

## B.     The District Court Properly Calculated Four Pillars's Guideline Range

7

### 1. Acquitted Conduct

Four Pillars next argues that the district court's sentence is unreasonable because the court considered acquitted conduct when it calculated the Guidelines range. We agree with Four Pillars that the district court considered acquitted conduct when it calculated the loss incurred by Avery, but we hold that the district court did not err by doing so.

The district court imposed a 14-point increase in the offense level based upon the losses incurred by Avery, which resulted from the alleged transmission of formulas from Lee to Four Pillars, including the formula S-490. The indictment alleged that Four Pillars (and the Yangs) engaged in a scheme to defraud Avery by unlawfully taking Avery's confidential business information. The indictment described the transmission of the S-490 formula in the "methods and means" section that preceded the charged counts. The S-490 formula related to the eight mail fraud counts; the district court granted a Rule 29 motion for acquittal as to six of those counts, the government moved to dismiss one count, and the jury acquitted the defendants on the remaining count.

In *Watts v. United States*, 519 U.S. 148, 157 (1997), decided pre-*Booker*, the Supreme Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." In *United States v. Brika*, 487 F.3d 450 (6th Cir. 2007), we held that post-*Booker*, sentencing courts may consider acquitted conduct, proved by a preponderance of the evidence.

> [W]e see no reason to exclude from the court's consideration conduct on which a jury either deadlocked or rendered a judgment of acquittal. . . . *Booker* permits district courts to find facts at sentencing. *Watts* discusses only the standard of proof that applies when that fact-finding takes place. There is no contradiction between them. Accordingly, *Watts* controls here. Until the Supreme Court holds differently, a jury's

8

> inability to reach a verdict on a particular count under a reasonable-doubt standard does not require district courts to employ anything other than a preponderance standard at sentencing.

487 F.3d at 459. *Brika* did not actually concern acquitted conduct, but rather conduct as to which the jury had deadlocked, but we have since held explicitly that acquitted conduct may be considered by the court at sentencing. *See United States v. Mendez*, 498 F.3d 423, 427 (6th Cir. 2007); *see also United States v. Tello-Nicio*, No. 06-4644, 2007 U.S. App. LEXIS 18636, at *2 (4th Cir. Aug. 6, 2007) (even after *Booker*, "a district court is free at sentencing to consider acquitted conduct proved by a preponderance of the evidence"); *United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (holding that it is not unconstitutional for the sentencing judge to use acquitted conduct if that conduct was proved by a preponderance of the evidence because "[a]ll an acquittal means is that the trier of fact . . . did not think the government had proved its case beyond a reasonable doubt"); *United States v. Mercado*, 474 F.3d 654, 657-58 (9th Cir. 2007) (at sentencing, "the district court could constitutionally consider the acquitted conduct"); *United States v. Gobbi*, 471 F.3d 302, 314 (1st Cir. 2006) ("Post-*Booker*, . . . acquitted conduct, if proved by a preponderance of the evidence, still may form the basis for a sentencing enhancement."); *United States v. Farias*, 469 F.3d 393, 399 (5th Cir. 2006) (same); *United States v. Faust*, 456 F.3d 1342, 1347-48 (11th Cir. 2006) (same); *United States v. Dorcely*, 454 F.3d 366, 371 (D.C. Cir. 2006); *United States v. Hayward*, 177 F. App'x 214, 215 (3d Cir. 2006) (same); *United States v. High Elk*, 442 F.3d 622, 626 (8th Cir. 2006) (same); *United States v. Vaughn*, 430 F.3d 518, 526-27 (2d Cir. 2005) (same); *United States v. Magallanez*, 408 F.3d 672, 684-85 (10th Cir. 2005) ("Applying the logic of *Watts* to the Guidelines system as modified by *Booker*, we conclude that when a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury

9

determinations reached through application of the more onerous reasonable doubt standard.").

Moreover, we find nothing in *Rita* to abrogate our precedent (and that of our sister circuits) that a sentencing court may consider acquitted conduct, and may consider it under a preponderance-of-the-evidence standard.

### 2. Relevant Conduct and Loss Calculation

We next consider whether the district court erred when it concluded that Four Pillars's acquitted conduct constituted relevant conduct pursuant to U.S.S.G. § 1B1.3. On appeal, Four Pillars raises several arguments: (1) the activities related to S-490 were wholly unrelated to the counts of conviction and therefore not relevant for purposes of sentencing[2]; (2) the district court should not have considered the theft of the S-490 formula because the defendants did not actually obtain the formula; and (3) the district court should not have considered the alleged theft of the S-490 formula because this conduct pre-dated the EEA and was not illegal at the time it occurred. Similarly, Four Pillars asserts that the district court committed clear error when it accepted the government's loss calculation because Four Pillars offered evidence that Norman Conti's testimony, upon which S-490's loss calculation was based, was false.

The government argues, however, that Four Pillars "did not ask the district court to recalculate the Guidelines because the amount of loss was inaccurate" and instead raised only the constitutional claims previously addressed. Four Pillar counters that it preserved its objection to the district court's relevant-conduct and loss-calculation findings because it raised these claims at the first re-sentencing hearing and in the subsequent appeal. We never reached the merits of these claims because we remanded for re-sentencing under *Booker*.

---

[2]Sally Yang's attorney made this argument before the district court, but Four Pillars's counsel did not.

10

Because Four Pillars did not present these arguments to the district court at the post-*Booker* re-sentencing, we review for plain error. *See United States v. Tribble*, 106 F. App'x 392, 394 (6th Cir. 2004) ("[T]his court reviews only for plain error where a defendant waives the right to assert an error on appeal by failing to object to an alleged error at sentencing."). To establish plain error, Four Pillars must demonstrate that there was (1) error, (2) that was plain, and (3) that affected substantial rights. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467 (citations and internal punctuation omitted).

### a. Relevant Conduct

At the initial sentencing hearing, the district court concluded that "the government has met its burden of proving that the defendants were engaged in a scheme or artifice to defraud [Avery] of its confidential and proprietary information which included approximately 60 formulas" from two of Avery's divisions. "The [theft of the formulas] may be included in [Four Pillars's] offense level as 'relevant conduct' only if it is 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Hill*, 79 F.3d 1477, 1481-82 (6th Cir. 1996) (quoting U.S.S.G. § 1B1.3(a)(2)).[3]

Relevant conduct includes a "common scheme or plan" and the "same course of conduct." The commentary to U.S.S.G. § 1B1.3 clarifies the meaning of these terms.

> (A) Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at

---

[3]Section 1B1.3(a)(2) relates to offenses covered by U.S.S.G. § 3D1.2(d). The presentence report calculated Four Pillars's base offense level pursuant to Section 2B1.1, which falls within § 3D1.2(d).

least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. . . .

(B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.

Cmt. 9. The district court has wide discretion in what it may consider as relevant conduct in implementing U.S.S.G. § 1B1.3. *United States v. Hough*, 276 F.3d 884, 898 (6th Cir. 2002). "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Here, the defendants' conduct from 1986 to 1997 involved a common victim and a common purpose: to misappropriate confidential information from their competitor, Avery. The sting that occurred in early September 1997 did not occur in a vacuum. Rather, the meeting in which the Yangs obtained the mock Avery document was just another step in an ongoing (and long-standing) scheme put into effect by the defendants to obtain confidential and proprietary information belonging to Avery.

During the trial, the district court heard testimony that Lee and the Yangs met on multiple occasions during this time period and discussed Avery's formulas and technology, and that Lee received monetary payments from the Yangs. Lee testified that he provided approximately 10 of Avery's formulas to Four Pillars during his relationship with the defendants, including S-490, an Avery adhesive formula.[4] At trial, Norman Conti, an Avery employee, testified that Lee was

---

[4]On cross examination, however, Lee retreated a bit and testified that he had provided Four Pillars with the "ingredients" for some of Avery's formulas, rather than the ingredients *and* the process for producing the adhesives.

instrumental in the development of S-490, and that a September 10, 1989, letter, authored by Lee and addressed to Yang, contained the formula (i.e., "the raw materials and the percent of those raw materials in the formula") for Avery's S-490.

Additionally, at the December 16, 1999, sentencing hearing, the government provided the court with a list of 63 formulas that had been given to the defendants and were located within Four Pillars's files. At this hearing, Conti testified that another letter from a Four Pillars employee to Lee contained S-490 "formula information." Based on the foregoing, we conclude that the district court did not err in considering the theft of the formulas as relevant conduct for sentencing purposes.

At the first re-sentencing, Four Pillars sought to proffer expert testimony that Conti perjured himself when he testified that the September 10, 1989, letter contained the S-490 formula, because the letter lacked nine ingredients, including the critical ingredient, to make the adhesive and likewise lacked the "systematic procedure that needs to be followed" to make S-490. Though the district court acknowledged that it had the discretion to revisit its findings on relevant conduct, it declined to do so. Instead, the district court sentenced Four Pillars based on the court's previous factual findings and, after imposing the sentence, permitted Four Pillars to proffer its expert's testimony and create a record for appeal.

The district court had no obligation to revisit its findings as to relevant conduct and the loss calculation. *See Hwei-Chen Yang*, 153 F. App'x at 380 ("[W]e have repeatedly held that a district court, acting in its discretion, may choose not to reconsider the entire sentencing procedure."). Four Pillars was on notice of the contents of the September 10 letter,[5] but failed to produce the expert at

---

[5]For instance, at trial, Four Pillars's defense counsel challenged Conti's characterization of the information contained within the September 10 letter as a "formula" because "there are many more elements to the formula than these that are [listed] in the letter."

the original sentencing hearing. Moreover, Four Pillars fails to appreciate that the court heard the testimony of other witnesses, besides Conti, and viewed other evidence supporting a finding of relevant conduct. We find no error in the district court's refusal to reconsider its finding of relevant conduct.[6]

Four Pillars also argues that the district court should not have considered the alleged theft of the S-490 formula because this conduct pre-dated the EEA and was not illegal at the time it occurred. "[A] district court may not include conduct in its sentencing calculation pursuant to § 1B1.3(a)(2) unless the conduct at issue amounts to an offense for which a criminal defendant could potentially be incarcerated." *United States v. Shafer*, 199 F.3d 826, 831 (6th Cir. 1999). While the alleged theft could not have violated the EEA, it nonetheless constitutes an offense for which a defendant could potentially be incarcerated, namely, mail fraud. First, "[i]t is well established that a scheme which deprives an employer of the honest and faithful services of an employee or the right to have his business conducted in an honest manner can constitute a scheme to defraud under the mail fraud statute." *United States v. Feldman*, 711 F.2d 758, 763 (7th Cir. 1983) (citing cases from the Seventh and Ninth Circuits). This could apply to the activities undertaken by Lee for Four Pillars's benefit. Second, a scheme to defraud also could have arisen when Four Pillars received Avery's confidential formulas in the mail. The mail fraud statute provides that

> [w]hoever, having devised . . . any scheme or artifice to defraud . . . places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any

---

[6]Moreover, even if the district court had considered the expert's testimony, the court would then have had to choose between two possibilities: Lee provided formulas to Four Pillars or Lee did not. Either conclusion would be permissible in light of the evidence before the trial court and choosing between the two views would boil down to a credibility determination. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *See Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (internal punctuation and citation omitted).

matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing . . . shall be fined under this title or imprisoned . . . .

18 U.S.C. § 1341. For the foregoing reasons, the district court did not plainly err in its relevant conduct determination.

### b. Loss Calculation

As we have already noted, the government asserted that Four Pillars unlawfully obtained some 60 formulas from Avery. The district court stated that

> [t]he Government asked the Court to consider the research and development cost as a measure of loss . . . for the more than sixty adhesive formulas obtained by the Defendants between 1989 and 1996. At the sentencing hearing, Mr. Norman Conti, []an Avery employee, only testified to the value of the adhesive formula known as S-490. S-490 was an adhesive formula that was developed entirely within Avery, and no outside vendors or suppliers were used. The Government, based upon the testimony of Mr. Conti and Dr. Kevin Neels [], proved that S-490 cost Avery approximately $869,300 to research and develop.

While Four Pillars proffered testimony that Conti perjured himself because the September 10, 1989, letter did not contain the S-490 formula in its entirety, Four Pillars has failed to demonstrate how the loss calculation as it related to the S-490 formula was false or how the district court erred in its calculation. Because we have found that the district court properly considered the theft of the S-490 formula as relevant conduct, we find no error in the district court's determination that the value of the S-490 formula was the value set forth in Conti's cost model.

Furthermore, as we have already noted, in its initial sentencing determinations, the district court explicitly refused to include in its calculation of loss any specific amounts attributable to those 60-some other formulas, holding that the government had failed to provide sufficient evidence to establish those amounts reliably. Instead, the court added one point to the base offense level to

15

account for the fact that there was additional loss. At the last sentencing hearing, the court explained that it would not revisit those findings, but would rely on them for the amount of the loss. Our review of the record satisfies us that, although it does not contain the specific cost to Avery for each of those formulas, it does contain sufficient information to permit the district court to make a "reasonable estimate of the loss." U.S.S.G. § 2B1.1, cmt. n. 3. As we have already held, the district court was not required to revisit these calculations, and we find no error in its ultimate calculation of loss.

## C. Four Pillars's Sentence is Reasonable

Four Pillars argues that its sentence is unreasonable because the district court (1) failed to address relevant 18 U.S.C. § 3553(a) factors, (2) failed to consider Four Pillars's inability to pay the fine, and (3) considered acquitted conduct. We have already rejected Four Pillars's challenges to the calculation of the sentence under the Guidelines, namely, that the district court erred in including acquitted conduct, and in calculating the amount of loss. We afford a presumption of reasonableness to a properly calculated within-Guidelines sentence. *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Rita*, 127 S.Ct. at 2462 (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines").

### 1. Procedural Unreasonableness

When sentencing a defendant, the district court must impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes'" of 18 U.S.C. § 3553 (a)(2), *see United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (quoting § 3553(a)), and on appeal, we review the district court's sentence for reasonableness. *See Rita*, 127 S. Ct. at 2459; *Booker*, 543 U.S. at

16

261.

Because Four Pillars did not object to the sentence after the district court announced it, we review the procedural reasonableness of Four Pillars's sentence for plain error. *See*, *e.g.*, *United States v. Bailey*, 488 F.3d 363, 367 (6th Cir. 2007) ("[W]hen the district court asks at sentencing whether there are any objections to the sentence and the appellant raises none, we review the [procedural reasonableness of the] sentence only for plain error.").

"A sentence may be procedurally unreasonable if 'the district judge fails to "consider" the applicable Guidelines range or neglects to "consider" the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). While we have consistently required district courts to consider § 3553(a)'s factors, procedural reasonableness "does not require a rote listing," *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006), or a "'ritual incantation' of the factors," *Williams*, 436 F.3d at 709 (quoting *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005)), so long as the court provides "sufficient evidence in the record to affirmatively demonstrate [its] consideration of [the factors]." *United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006) (citation and internal punctuation omitted). That is, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468.

At the second re-sentencing, in addition to the advisory Guidelines range, the district court considered "victim impact statements," evidence that Four Pillars "repeated an ongoing scheme" to steal trade secrets from Avery, Avery's devoting of "substantial resources" to developing its

17

formulas, and Four Pillars's ability to pay the fine before finding that a variance from the recommended Guidelines range was not warranted by § 3553(a)'s factors. The judge also noted that the defendants used one of Avery's own employees for their espionage and remarked that Congress created the EEA specifically to protect corporations from this sort of crime. The district court therefore considered the "nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), and the need to provide "adequate deterrence to criminal conduct," § 3553(a)(2)(B). Because the record demonstrates that the district court considered the parties' arguments and offered a reasoned basis for arriving at the sentence, we find the sentence procedurally reasonable.

## 2. Substantive Reasonableness

"'[E]ven if a sentence is calculated properly, i.e.[,] the Guidelines were properly applied and the district court clearly considered the § 3553(a) factors and explained its reasoning, a sentence can yet be unreasonable.'" *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (quoting *United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006)). A sentence may be "substantively unreasonable where the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Ferguson*, 456 F.3d at 664 (*quoting Webb*, 403 F.3d at 385).

Four Pillars argues that the sentence is substantively unreasonable because the district court imposed a fine that Four Pillars is unable to pay. Four Pillars has already paid one-half of the $2,000,000 it owes. Four Pillars relies on § 8C2.2(b), which states that

[w]here it is readily ascertainable through a preliminary determination of [the

18

minimum fine under the appropriate Guidelines range] that the organization cannot and is not likely to become able (even on an installment schedule) to pay such minimum guideline fine, a further determination of the guideline fine range is unnecessary. Instead, the court may use the preliminary determination and impose the fine that would result from the application of § 8C3.3 (Reduction of Fine Based on Inability to Pay).

Section 8C3.3 provides that

(a) The court shall reduce the fine below that otherwise required by [the properly calculated Guidelines range], to the extent that imposition of such fine would impair its ability to make restitution to victims.

(b) The court may impose a fine below that otherwise required by [the properly calculated Guidelines range] if the court finds that the organization is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay the minimum fine [set forth in the Guidelines range].

*Provided*, that the reduction under this subsection shall not be more than necessary to avoid substantially jeopardizing the continued viability of the organization.

U.S.S.G. § 8.3C3. Additionally, "an organization is not able to pay the minimum fine if, even with an installment schedule . . . , the payment of that fine would substantially jeopardize the continued existence of the organization." U.S.S.G. § 8C3.3, application n. 1. In addition to 18 U.S.C. § 3553(a) factors, a district court "shall consider" several factors relating to the imposition of a fine, including "the burden that the fine will impose upon the defendant" and the defendant's financial condition. 18 U.S.C. § 3572(a)(2); *see also United States v. Patient Transfer Serv.*, 465 F.3d 826, 827 (8th Cir. 2006) ("A defendant's financial condition must be considered in determining the amount of a fine.").

Even under the mandatory Guidelines, a district court was not required to waive or reduce a corporation's fine, *see, e.g., United States v. Nathan*, 188 F.3d 190, 213 (3d Cir. 1999) ("Guideline section 5E1.2 requires that a fine be waived when an individual defendant is unable to pay. By

19

contrast, section 8C3.3(b), the corresponding provision in the corporate Sentencing Guidelines, does not require waiver or reduction."), unless the fine would affect restitution. Moreover, at least one circuit court has concluded that "even if the district court's fine would completely bankrupt [a corporation], neither section 8C3.3(a) nor section 8C3.3(b) [preclude] the court from imposing such a fine so long as the fine d[oes] not impair [the corporation's] ability to make restitution." *United States v. Eureka Labs., Inc.*, 103 F.3d 908, 912 (9th Cir. 1996). While the court must consider the corporation's ability to pay the fine, it is not obligated to reduce or waive the fine if the fine would cause financial hardship.

Before the district court, Four Pillars argued that it has very few liquid assets and that it was in "financial ruin." In an affidavit attached to its sentencing memorandum, Four Pillars asserted that as of January 2006, it had net assets of $14,848,451 and liabilities of $4,586,531 and during calendar year 2005, Four Pillars had revenues of $3,654,717 and a loss of $998,833. The affidavit further asserted that the majority of Four Pillars's assets were illiquid and that the company could not take on additional debt. The government, however, pointed out that though Four Pillars painted itself as a shell of its former self, there are Four Pillars corporations other than the one in Taiwan, i.e., Four Pillars Singapore and Four Pillars China, and that Four Pillars continues to do business. The district court recognized that Four Pillars may not be in optimum financial shape, but nevertheless determined that at the time the offenses were committed, at the initial sentencing, and since that time, Four Pillars has had the ability to pay the fine.

Four Pillars provided non-verified financial information[7] to the district court, asserting that

___

[7]Its affidavit informed the district court that its "official statements, prepared by KPMG, will not be available until June of 2006." The district court declined to postpone sentencing until that time.

20

its net equity was $10,261,920 (assets minus liabilities) as of January 2006. Despite its 2005 loss, Four Pillars has failed to show that it lacks sufficient assets or equity to pay the remaining portion of the fine it owes. To the extent that its resources are not liquid, Four Pillars can convert its non-liquid assets to liquid assets in order to pay its fine. The district court's sentence was substantively reasonable.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentence.