**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0231n.06
Filed: May 5, 2008

**No. 06-4197**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JEFFREY L. CONNER,

    Defendant-Appellant.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

**BEFORE:**   KEITH, CLAY, and GILMAN, Circuit Judges.

    **CLAY, Circuit Judge.** Defendant Jeffrey L. Conner appeals his 51-month sentence for conspiracy to commit bank and mail fraud in violation of 18 U.S.C. § 371, bank fraud in violation of 18 U.S.C. §§ 1344 and 2, mail fraud in violation of 18 U.S.C. § 1341, and making false statements in violation of 18 U.S.C. § 1001 imposed on August 9, 2006 by the United States District Court for the Northern District of Ohio. For the reasons presented below, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

**A.**     **Substantive Facts**

In the summer of 2000, Defendant Jeffrey L. Conner and his co-defendant Peggy A. Lybrand convinced their friend and neighbor Marjorie Sponcil to help them start a company called "Web Producers, Inc." that would establish and sell websites on the internet. Sponcil invested money in the business and became Web Producers' president while Conner and Lybrand were responsible for the day-to-day management of the business. In November 2000, Conner convinced Sponcil to apply for a business loan from Second National Bank (a federally insured institution) in the amount of $140,000. Conner and Lybrand prepared the loan application and supporting documents, and in the application Conner used the assumed name, R.J. Jones, and claimed to be the secretary of Web Producers. Conner and Lybrand also convinced Sponcil to apply for business credit cards from a variety of companies including American Express and First Card (now J. P. Morgan Chase). As a result of the debts incurred by Conner and Lybrand, creditors foreclosed upon Sponcil's house, and Sponcil had to buy her house back.

In January 2001, Conner and Lybrand asked Thomas Probst to assist them in creating Cycle Supply Company, Inc. to sell motorcycle parts on the Internet. Probst incorporated the company and became the president of Cycle Supply Company while leaving the day-to-day operations of the business to Conner and Lybrand. Conner and Lybrand convinced Probst to obtain a $125,000 business loan from Second National Bank. In addition Conner and Lyband convinced Probst to apply for credit at various institutions.

Conner convinced at least two other individuals to invest in motorcycle parts companies. In the summer of 2002, Conner convinced Mary Kay Beight to invest in H.D. Afterparts, Inc., and in March 2003, Conner convinced Michael Stepan to invest in Cycle City, Inc. Beight and Stepan

became officers in the respective companies, and Conner managed the day-to-day operations. Conner convinced Beight and Stepan to apply for business loans from Key Bank and to apply for lines of credit from credit card and credit servicing companies.

Instead of managing the companies as promised, Conner and Lybrand used for their personal benefit the loans and lines of credit that Sponcil, Probst, Beight and Stepan had obtained. Conner and Lybrand would use the loans to pay for goods and services for the businesses they managed. However, these goods and services would be provided by other companies owned by Conner and Lybrand, and the value of the goods and services would be much less than the price paid for them. Conner and Lybrand also used the credit cards obtained in the name of businesses with innocent investors for their personal benefit. This conspiracy lasted between June 1999 and 2003. Throughout this time, Conner and Lybrand used the mail to send applications for credit cards, credit agreements, and financial information.

## B. Procedural Facts

Conner and Lybrand were indicted in the United States District Court for the Northern District of Ohio on February 15, 2006 for one count of conspiracy to commit bank and mail fraud in violation of 18 U.S.C. § 371, four counts of bank fraud in violation of 18 U.S.C. §§ 1344 and 2, and three counts of mail fraud in violation of 18 U.S.C. § 1341. A superseding indictment was filed on April 12, 2006 that incorporated all the charges contained in the first indictment and added two counts of making false statements in violation of 18 U.S.C. § 1001. The ninth count of the indictment alleged that on August 12, 2003 Conner made false statements to FBI agents regarding whether he was R.J. Jones and whether the sale of computer equipment from Digital

Communications to Web Producers was legitimate. The tenth count alleged that Lybrand made false statements to the FBI.

On May 19, 2006, Conner entered into a plea agreement with the government in which he agreed to plead guilty to Counts 1-9 of the superseding indictment. The plea agreement contained a joint stipulation regarding the computation of the offense level to be used in computing Conner's advisory sentencing range under the United States Sentencing Guidelines ("the Guidelines"). The parties stipulated that the correct offense level before deducting any points for acceptance of responsibility was 20. This calculation included a base offense level of 6 pursuant to USSG § 2B1.1(b), a 12-level enhancement for a loss amount of over $200,000 pursuant to USSG § 2B1.1(b)(1)(G), and a 2-level enhancement for the use of sophisticated means to commit the crime pursuant to USSG § 2B1.1(b)(8).[1] Any adjustments to the offense level due to the acceptance of responsibility and the calculation of Conner's criminal history category were left to be determined by the sentencing judge. The agreement stated in part that "[t]he parties agree to recommend that the Court impose a sentence within the range determined pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations set forth [in the plea agreement]. The government will not request a sentence higher than the advisory Sentencing Guidelines range and the defendant will not request a sentence lower than the advisory Sentencing Guidelines range." (J.A. 58.)

---

[1]The November 1, 2002 Guidelines Manual was used to determine the advisory Guidelines range.

Prior to sentencing, the Probation Office prepared a Presentence Report ("PSR") that suggested a total offense level of 17 due to the application of the same base offense level and adjustments contemplated in the plea agreement with an additional 3-level downward adjustment for acceptance of responsibility. The PSR also reviewed Conner's criminal history. Conner had been convicted of receiving stolen property on April 25, 1985 and convicted of theft by deception on October 29, 1990. No criminal history points were applied for Conner's 1985 conviction because it occurred more than ten years before the criminal activity at issue. USSG § 4A1.2(e). Two criminal history points were applied as a result of Conner's 1990 conviction because it resulted in a six-month jail sentence. USSG § 4A1.1(b). As a result of these two criminal history points, the probation officer determined that Conner's past convictions placed him in criminal history category II. In a letter to the probation officer, Conner's counsel indicated that the PSR over-represented the seriousness of Conner's criminal history "and that a downward departure may be warranted pursuant to USSG § 4A1.3(b)(1)."[2] (J.A. 129.)

At an August 9, 2006 sentencing hearing, the district court asked defense counsel to explain his objections to the PSR. Conner's attorney explained that Conner was arrested for theft by deception on March 31, 1989 even though he was sentenced in October 1990. Because Conner's current offense began in 1999 or early 2000 and since any sentence of less than a year and one month that was imposed more than ten years before the current offense would not lead to the imposition of criminal history points, Conner's attorney argued that even though "technically those two points

---

[2]Conner's letter to the probation officer is not contained in the record on appeal. However, in an addendum to the PSR, the probation officer related the contents of the letter.

probably do count" the court should keep in mind the fact that the conviction was nearly ten years old in its computation of the criminal history category in light of the advisory nature of the Guidelines. (J.A. 66-67.)

In response, the government argued that since defense counsel was seeking a downward departure in breach of the plea agreement, the government would seek an upward departure. The government pointed out that the loss amount of $200,000 contained in the plea agreement did not encompass the amount of loss intended by Conner and that if the court considered the loan applications that had been denied, the total loss amount would be greater than $400,000. The government also asked the court to take into account Conner's management role in the offense because there were many victims and a complex scheme set up by Conner and Lybrand. The court was also asked to consider an abuse of trust enhancement. Because Conner lied to FBI agents during their investigation, the government asked the court to consider Conner's obstruction of justice in determining Conner's sentence. In response to Conner's arguments regarding his criminal history, the government discussed its investigation of Conner's and Lybrand's involvement in a company they owned called Digital Communications. The government claimed that Conner and Lybrand made fraudulent insurance claims regarding equipment belonging to Digital Communications in early 1999. The government further alleged that Lybrand filed for bankruptcy to cover up the fraud to avoid repaying those who had financed the equipment. As a result, the government believed Conner's criminal history was not over-represented.

The court responded to the government's arguments by noting that many of the issues the government raised were not reflected in the plea agreement. The court then questioned the parties,

asking: "[the government] want[s] to argue upward, the defendant wants to argue downward essentially, so at this point is the [plea] agreement of any value to me as it relates to sentencing?" (J.A. 74.) The government responded that it was only seeking an upward departure due to Conner's request for a downward departure and that it would be content if the court sentenced Conner within the upper end of the range that corresponded to the offense level to which the parties agreed in the plea agreement. Defense counsel responded that Conner was not necessarily asking for a downward departure but was only raising the over-representation of his criminal history in order for the court to sentence him at the low end of the sentencing range corresponding to the offense level in the plea agreement.

After hearing statements from victims and from Conner, the district court commented to Conner regarding the plea agreement:

> [T]his negotiation, this agreement was certainly extremely favorable to you, sir. Considering everything I've heard here today, the penalty that you face under these advisory guidelines, under the computation of this agreement is, in my mind, minimal considering the harm these victims have faced.
>
> It's really not a – really not a fair resolution – I guess "fair" is not the appropriate term – not the appropriate resolution based upon all these – all the money that's moved around here, all this conduct that's been set forth, all these nine counts that you pled guilty to and the harm that was done to these victims.

(J.A. 90-91.) Before the district judge sentenced Conner, the government revised its previous recommendation regarding sentencing in light of defense counsel's claim that Conner was not seeking a downward departure. The government recommended that Conner be sentenced to the high end of the Guidelines range corresponding to the offense level agreed upon in the plea agreement.

After listening to the parties' arguments, the district court proceeded to sentence Conner. It accepted the base offense level of 6, the 12-level increase for a loss exceeding $200,000, and the 2-level increase for using sophisticated means that were contained in the plea agreement. The court also applied additional enhancements of 2 levels for being an organizer, leader, manager or supervisor of the criminal activity pursuant to USSG § 3B1.1(c) and 2 levels for obstructing justice pursuant to USSG § 3C1.1. The court reluctantly applied a 2-level downward adjustment for Conner's acceptance of responsibility, and upon the government's motion, the court granted a downward adjustment of an additional point because Conner timely entered a guilty plea. As a result of these adjustments, the court determined that Conner's offense level was 21, resulting in an advisory Guidelines range of 41-51 months. After reviewing the 18 U.S.C. § 3553(a) factors, the district court sentenced Conner to 51 months imprisonment on each count to be served concurrently. Although given the opportunity to do so, Conner raised no objections to the district court's sentence. Judgment was imposed on August 9, 2006, and Conner filed a timely notice of appeal on August 22, 2006.

## DISCUSSION

### I

Conner claims that the government breached the plea agreement by recommending an upward departure from the advisory Guidelines range. Whether the government breached a plea agreement is an issue that this Court generally reviews *de novo*. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). However, Conner failed to object to the government's arguments at sentencing despite being given the opportunity to object after the pronouncement of his sentence. As a result,

this Court may only review Conner's claims for plain error. *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (citing *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004)). This Court may reverse under the plain error standard "if it is found that (1) there is an error; (2) that is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004).

The government has a duty to honor plea bargains because defendants waive constitutional rights in exchange for the government's promises. *Santobello v. New York*, 404 U.S. 257, 262 (1971). However, a defendant must perform his or her part of the bargain, and if he or she fails to do so, the government is not bound to perform its portion of the plea agreement. *United States v. Ellis*, 470 F.3d 275, 284 (6th Cir. 2006). If the government breaches a plea agreement absent a prior breach by the defendant, this Court must remand for resentencing before a different judge. *United States v. Barnes*, 278 F.3d 644, 648 (6th Cir. 2002).

Conner's plea agreement with the government contained many mutual promises regarding sentencing. Both parties agreed to recommend a sentence to the court that was within the Guidelines range consistent with the offense level calculated in the agreement. The agreement specifically stated that neither party would recommend a departure from the Guidelines range. The parties agreed that no adjustments to the base offense level of 6 applied other than a 12-level upward adjustment for a loss amount of over $200,000, a 2-level upward adjustment for the use of sophisticated means, and whatever adjustments for acceptance of responsibility that might apply. The parties made no agreement regarding the criminal history category applicable to Conner, and

the parties remained free to advise the sentencing court regarding issues not decided in the agreement.

An addendum to the PSR notes that Conner sent a letter to the probation officer objecting to the PSR and requesting that the court consider a downward departure from the Guidelines range because Conner claimed that his criminal history score over-represented his criminal record. When the district court asked defense counsel about this objection at sentencing, defense counsel did not claim that the addendum misstated his position. Instead, defense counsel discussed the over-representation of Conner's criminal history while noting that the criminal history score was properly calculated and that the Guidelines were only advisory. Only after these statements by defense counsel did the government request an upward departure. In so doing, the government specifically stated that Conner had breached his plea agreement by requesting a downward departure. After the district court expressed its opinion that arguments for departure were inconsistent with the plea agreement, Conner revised his argument and claimed that he was not "necessarily" asking for a downward departure and requested to be sentenced at the low end of the advisory Guidelines range. The government then stated, when asked by the district court for a recommendation, that since Conner was no longer seeking a downward departure, Conner should be sentenced to the upper end of the Guidelines range corresponding to the agreed upon offense level.

By making arguments for a downward departure, Conner breached the plea agreement. On appeal, Conner claims that his argument regarded his criminal history score and was thus acceptable under the plea agreement. Yet, Conner recognized that the criminal history score was correctly calculated and also did not deny that he was seeking a downward departure until challenged by the

district court on his compliance with the plea agreement. As a result of Conner's breach, the government was free to argue for an upward departure. Additionally, when Conner remedied his breach by asking for a sentence on the low end of the advisory Guidelines range called for by the offense level contained in the plea agreement and a correct calculation of his criminal history score, the government stopped asking for an upward departure and simply asked for a sentence on the high end of the advisory range. As a result, the government's arguments for an upward departure do not require Conner's sentence to be vacated.

## II.

Conner claims that the application of sentencing enhancements for his role in the offense and for obstruction of justice was erroneous because the district court relied upon evidence to which the parties had not stipulated in Conner's plea agreement. Since Conner makes a constitutional claim by challenging judicial factfinding at sentencing, this Court reviews his claim *de novo. U.S. v. Four Pillars Enterprise Co., Ltd.*, 2007 WL 3244034, at *2 (6th Cir. 2007) (unpublished) ("Since a constitutional challenge to a sentence raises a question of law, we review [this] claim *de novo*.")*.*

Conner's argument that his sentencing was unconstitutional rests primarily upon language from *United States v. Amiker*, 414 F.3d 606 (6th Cir. 2005). In *Amiker*, we reversed a defendant's sentence because the district court had enhanced the sentence based upon facts that were not stipulated in the defendant's plea agreement. However, Amiker had been sentenced before the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005), when the Sentencing Guidelines were mandatory. As a result, the enhancement of Amiker's sentence above the Guidelines range authorized by the facts contained in the plea agreement resulted in a sentence that

exceeded the maximum punishment authorized for his crime and was thus violative of the Sixth Amendment. *Id.* at 607 (citing *United States v. Booker*, 543 U.S. 220 (2005)). Conner, on the other hand, was sentenced under the current advisory Guidelines scheme. As a result, the enhancement of his sentence above the advisory Guidelines range authorized by the facts admitted in his plea agreement would only be unconstitutional if it exceeded the statutory maximum penalty. *Booker*, 543 U.S. at 244 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"). The statutory maximum for each of the nine counts to which Conner pleaded guilty ranged from five years to thirty years. 18 U.S.C. § 371 (5 years); 18 U.S.C. § 1001 (5 years); 18 U.S.C. § 1341 (20 years); 18 U.S.C. § 1344 (30 years). Conner's sentence of 51 months running concurrently for each count was less than the statutory maximum for any of the crimes of which he was convicted. Thus, the district court did not err in finding facts not contained in the plea agreement to determine Conner's sentence.

## CONCLUSION

Based on the foregoing analysis, we **AFFIRM** Conner's sentence.